IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**
August 16, 2024 03:43 PM
SCT-Crim-2022-0033
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

DEVINDRA JAGLAL, )
    Appellant/Defendant, )
     )
     )
v. )
     )
PEOPLE OF THE VIRGIN ISLANDS, )
    Appellee/Plaintiff. )
     )

**S. Ct. Crim. No. 2022-0033**
Re: Super. Ct. Crim. No. ST-2020-CR-00338 (STT)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Renee Gumbs-Carty

Argued: May 9, 2023
Filed: August 16, 2024

Cite as: 2024 V.I. 28

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA CABRET**, Associate Justice and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**David J. Cattie, Esq.**
The Cattie Law Firm
St. Thomas, U.S.V.I

    *Attorney for Appellant,*

**Tracy Myers, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I.

    *Attorney for Appellee.*

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 2 of 22

2024 V.I. 28

## OPINION OF THE COURT

**SWAN, Associate Justice.**

¶1 Appellant Devindra Jaglal ("Jaglal") challenges his convictions for second-degree assault – domestic violence and simple assault – domestic violence. For the reasons elucidated below, we affirm Jaglal's simple assault conviction, but we reverse his second-degree assault conviction and remand the matter to the Superior Court with instructions to grant him a new trial on that charge.

### I.      FACTS AND PROCEDURAL HISTORY

¶2 On November 13, 2020, Jaglal traveled to St. Thomas, U.S. Virgin Islands with his former girlfriend, Rocio Ramirez Garcia ("Garcia"). Upon arrival, the couple drove to their accommodations at Sapphire Beach Resort ("hotel") and were housed in room 206.

¶3 On November 15, 2020, following an aquatic excursion in the morning and lunch in the afternoon on Coki Point Beach, Jaglal and Garcia returned to their hotel room to prepare for night-time, social activities. However, once in room 206, Jaglal and Garcia argued over Jaglal's alleged need to use Garcia's phone. Jaglal claimed that his phone's battery was losing power and Garcia's phone was the only one with sufficient energy to initiate a call for a taxi. Garcia asserted that Jaglal wanted her to contact one of her friends to have the acquittance join them on vacation. Regardless of the cause of their conflict, a violent altercation ensued between Jaglal and Garcia which reportedly included Jaglal choking Garcia, repeatedly threatening to kill her, and shoving her to dislodge her from his person. To combat Jaglal's overt hostility, Garcia screamed repeatedly during the incident for Jaglal to spare her life.

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 3 of 22

2024 V.I. 28

¶4     Unsurprisingly, spectators and other hotel guests heard Garcia's screams and contacted the police. One group of concerned citizens called 911 to aid Garcia. This group included Bradley Thomas and Davion Samples, both of whom resided in the hotel room (205) adjacent to Jaglal and Garcia's hotel room (206) and obviously heard Garcia's screams. Moreover, Thomas and Samples also encountered Jaglal when he peered over the common partition separating the balconies of their respective hotel rooms. The two men agreed that Jaglal appeared anxious and prodded them to ascertain what sounds they had heard emanating from his hotel room. After a brief exchange, the two men told Jaglal that they had summoned the police, and Jaglal returned inside room 206.

¶5     Subsequently, following a brief conversation with Thomas and Samples to confirm the situation, Virgin Islands Police Department ("VIPD") officers Khalil Tatum ("Tatum") and Cindy Claudio ("Claudio") knocked on the door to room 206. Jaglal opened the door and Tatum asked him to step outside the room while Claudio talked with Garcia inside the room. Jaglal complied. Tatum testified that, as they waited for Claudio and Garcia to exit the room, Jaglal constantly stated that he did not call the police and that the police's presence was unnecessary. Approximately 20 minutes after she entered, Claudio exited room 206 with Garcia and indicated to Tatum that Jaglal should be arrested for domestic violence. Tatum placed Jaglal in custody and other officers took Garcia to the emergency room at Schneider Regional Hospital where she was treated for her injuries. Garcia's injuries amounted to contusions on her neck and arm with no broken bones or lacerations and no harm to her six-week-old, unborn child.

¶6     On May 24, 2022, Jaglal's two-day trial commenced. The People charged Jaglal in a three-count information with false imprisonment aggravated by domestic violence, violating

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 4 of 22

2024 V.I. 28

14 V.I.C. § 1051,[1] 16 V.I.C. § 91(b)(1)(2);[2] second-degree assault aggravated by domestic violence, violating 14 V.I.C. § 296(3),[3] 16 V.I.C. § 91(b)(1)(2); and simple assault aggravated by domestic violence, violating 14 V.I.C. §§ 292, 299(2),[4] 16 V.I.C. § 91(b)(1)(2).

¶7    On May 26, 2022, the jury convicted Jaglal of second-degree assault (count two), and simple assault (count three). On June 30, 2022, the court sentenced Jaglal to seven years incarceration on the second-degree assault charge and six months incarceration imposed on the simple assault charge. The penalty for the simple assault conviction was to be served concurrently with the seven-year sentence imposed for second-degree assault. On July 1, 2022, Jaglal perfected the instant appeal.

## II.    JURISDICTION

¶8    "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court." 4 V.I.C. § 32(a). "An order that disposes of all claims submitted to the Superior Court is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I.

---

[1] "Whoever without lawful authority confines or imprisons another person within this Territory against his will, or confines or inveigles or kidnaps another person, with intent to cause him to be confined or imprisoned in this Territory against his will, or to cause him to be sent out of this Territory against his will; and whoever willfully and knowingly sells, or in any manner transfers, for any term, the services or labor of any other person who has been unlawfully seized, taken, inveigled or kidnapped from this Territory to any other state, territory or country, is guilty of kidnapping and shall be imprisoned for not less than one and not more than 20 years. This action shall not apply in any case when a parent abducts his own child." 14 V.I.C. § 1051.

[2] "As used in this chapter, unless the context clearly indicates otherwise, (b) "Domestic violence" means the occurrence of any of the following acts, attempts or threats against a person who may be protected under this chapter pursuant to subsection (c) of this section: (1) Assault; (2) Battery; . . ." 16 V.I.C. § 91(b)(1)(2).

[3] "Whoever willfully—(1) mingles any poison with any food, drink, or medicine, with intent that the same shall be taken by any human being, to his injury; or (2) poisons any spring, well, or reservoir of water; or (3) strangle or attempts to strangle any person in an act of domestic violence; or (4) places or throws, or causes to be placed or thrown, upon the person of another, any vitriol, corrosive acid, pepper, hot water, or chemical of any nature with intent to injure the flesh or disfigure the body or clothes of such person—shall be imprisoned not more than 10 years and if the conviction results from an act of domestic violence, the person shall be fined no less than $1,000 and shall successfully complete certified mandatory Batter[y] Intervention Program." 14 V.I.C. § 296.

[4] "Whoever commits—(1) a simple assault; or (2) an assault or battery unattended with circumstances of aggravation—shall be fined not more than $250 or imprisoned not more than six months, or both the imprisoned and fined." 14 V.I.C. § 299.

2012)). Here, the Superior Court's June 30, 2022 judgment disposed of all claims submitted for adjudication. Further, it is well established that in a criminal case, the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a). *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (citing cases). Therefore, the June 30, 2022 judgment is final, and we exercise jurisdiction over Jaglal's appeal.

## III.    STANDARD OF REVIEW

¶9      We review the trial court's factual findings for clear error and exercise plenary review over its legal determinations. *Thomas v. People*, 63 V.I. 595, 602-03 (V.I. 2015) (citing *Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010)). Furthermore, we also exercise plenary review over jury instructions. *Prince v. People*, 57 V.I. 399, 405 (V.I. 2012). Nonetheless, a party advancing a claim of deficient jury instructions "has a particularly high burden. A jury instruction will generally not be invalidated unless it is shown that the instruction substantially and adversely impacted the constitutional rights of the defendant and impacted the outcome of the trial. . . . [Critically, if a party] timely objected to a final jury instruction, we review the objection for abuse of discretion. . . . However, [if] no objection [was] made[,] we review a[n allegedly deficient] jury instruction for plain error." *Id.* (citations omitted). Finally, we review the Superior Court's evidentiary decisions for abuse of discretion. *Tyson v. People*, 59 V.I. 391, 400 (V.I. 2013).

## IV.    DISCUSSION

### A.  The Superior Court Plainly Erred When It Lowered the People's Burden of Proof by Relying on Imperfect Synonyms in the Jury Instructions to Substitute for the Omitted Mens Rea of "Willfully"

¶10    On appeal, Jaglal posits three central issues. First, he alleges that the Superior Court erred when it omitted the mens rea of "willfully" for second-degree assault from the crime's statutory elements that were conveyed to the jury in the final instructions. Second, he contends that the trial court erred when it permitted Garcia to testify about a telephone call she received from Jaglal's mother who attempted to persuade Garcia to drop the charges against Jaglal, although the court had no evidence that Jaglal compelled his mother to call Garcia. Third, Jaglal argues that the trial court erred when it considered the call from Jaglal's mother at Jaglal's sentencing, although the court received no evidence that Jaglal compelled his mother to call Garcia.

¶11    Critically, Jaglal admits that he failed to raise issues one and three before the Superior Court. (Appellant's Br. 2-3). Accordingly, those issues are either waived (issue three) or will be reviewed only for plain error (issue one). It is axiomatic that issues in an appellant's brief, which were not raised at trial, are waived unless the issues affect the appellant's substantial rights. *See Ubiles v. People*, 66 V.I. 572, 583 (V.I. 2017) ("[A] party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal.") (citations omitted); V.I. R. APP. P. 22(m) ("Issues that were (1) not raised or objected to before the Superior Court, (2) raised or objected to but not briefed, or (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights.").

¶12    If the appellant's substantial rights are not implicated, we only review for plain error because the appellant failed to object to the issue at trial. *Woodrup v. People*, 63 V.I. 696, 720 (V.I. 2015). *See United States v. Montague*, 67 F.4th 520, 527 (2d Cir. 2023) ("When a party

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 7 of 22

2024 V.I. 28

'failed to raise th[e] statutory challenge below,' we 'review the district court's interpretation ... for plain error.'") (citations omitted); *United States v. Rose*, 538 F.3d 175, 178 (3rd Cir. 2008). Under plain error review, (1) there must be an error, (2) that is plain, (3) which affects a defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Wallace v. People*, 71 V.I. 703, 711 (V.I. 2019) (citations omitted). *See Johnson v. United States*, 520 U.S. 461, 466 (1997) (same); *Henderson v. United States*, 568 U.S. 266, 268 (2013) (same); *Davis v. United States*, 140 S. Ct. 1060, 1061 (2020) (same).

¶13 Moreover, because we find that the Superior Court's admission of improper testimony concerning the call Jaglal's mother made to Garcia to persuade Garcia to dismiss the case against Jaglal was harmless error, we affirm Jaglal's conviction for simple assault. *Woodrup v. People*, 63 V.I. 696, 720 (V.I. 2015) (holding that inadvertent admission of evidence is analyzed for harmless error); *United States v. Harbin*, 250 F.3d 532, 544 (7th Cir. 2001) ("Trial errors generally occur during the presentation of the case to the jury, and are amenable to harmless error analysis because they may be quantitatively assessed in the context of the evidence as a whole, to determine the effect on the trial. . . . No presumption of prejudice attaches for such errors, and they do not require reversal if they are harmless beyond a reasonable doubt.") (citations omitted); *Fontaine v. People*, 56 V.I. 571, 591 n.13 (V.I. 2012) ("Admission of evidence that should have been excluded constitutes a trial error.") (citations omitted); *Tuggle v. Netherland*, 79 F.3d 1386, 1391 (4th Cir. 1996) (explaining that improperly admitted evidence is subject to harmless error analysis); *Bledsoe v. Nelson*, 432 F.2d 923, 924 (9th Cir. 1970) (finding that the improper admission of defendant's incriminating statements at trial was harmless error because of the ample evidence in the trial record of defendant's guilt); *Feela v. Israel*, 727 F.2d 151, 157 (7th Cir. 1984) (finding that a prosecutor's improper

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 8 of 22

2024 V.I. 28

comments during closing arguments amounted to harmless error because of the strong case against the defendant); *Brown v. Senkowski*, 175 Fed. Appx. 430, 432 (2nd Cir. 2006) (finding that the improper admission of a line-up identification was harmless error where the record contained sufficient evidence of defendant's guilt).

¶14    Undoubtedly, the Superior Court omitted the mens rea of "willfully"[5] for second-degree assault from the crime's elements when it charged the jury at the close of the trial's evidentiary stage. J.A. 700-02. The relevant portion of the jury charge reads:

> In Count 2 of the information, defendant Jaglal is charged with assault in the second degree. This charge is based on his alleged violation of Title 14 VIC Section 296(3), and the relevant portion of that charge is as follows: Whoever willfully strangles or attempt[s] to strangle any person i[s] an act of domestic violence. In order to sustain its burden of proof for the crime of assault in the second degree, domestic violence, as set forth in Count 2 of the Information against the defendant, the People of the Virgin Islands must prove beyond a reasonable doubt that, on or about November 15, 2020, in St. Thomas, Virgin Islands, the defendant Devindra Jaglal strangled or attempted to strangle Rocio Ramirez, a person with whom he had an intimate relationship.
>
> J.A. 700-01.

¶15    The Superior Court's omission of the mens rea from its jury charge was error. Normally, we would reverse the case on that ground because such errors contravene Jaglal's rights and subvert constitutional protections as they obviate the People's burden to prove every element of a charged crime. *See Bank South Leasing, Inc. v. Williams*, 778 F.2d 704, 707 (11th Cir. 1985) ("Because of these deficient jury instructions, we therefore reverse the district court's decision in favor of Bank South in this particular appeal and remand the case for a new trial.") (citations omitted).

---

[5] The Virgin Islands Legislature has defined "willfully" in the Virgin Islands Code – "willfull" or "willfully", when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. 1 V.I.C. § 41.

¶16    However, we will not reverse the Superior Court in this matter because of its omission of the term "willfully" from the second-degree assault jury charge. Rather, we reverse the Superior Court because it only provided a partial, deficient substitute for the concept of "willfully" when it defined strangulation, which ultimately lowered the People's burden of proof, but did not obliterate it. Specifically, although the Superior Court omitted willfulness from the elements of second-degree assault when it charged the jury and that omission would ordinarily be reversible error, the error in this case was limited because the Court properly appraised the jury concerning synonyms to willfulness when it instructed the jury on the elements needed to convict Jaglal of strangulation. Obviously, a court is not required to simply repeat the verbatim language of a statute in its jury instructions (although it is unquestionably the preferred practice to do so), since the goal of jury instructions is to adequately apprise the jury on how to apply the law. *See State v. Kaiama*, 911 P.2d 735, 747 (Haw. 1996). Here, although not delineated in the incriminating acts that the People had to prove for Jaglal to be guilty of second-degree assault, the Superior Court did instruct the jury on mens rea when it defined the word "strangling," which it stated meant "intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck." *See Prince v. People*, 57 V.I. 399, 409 (V.I. 2012) (explaining that jury instructions are reviewed in their entirety on appeal); *United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021) (same); *United States v. Goris*, 876 F.3d 40, 48 (1st Cir. 2017) (same).

¶17    Critically, the mens rea for strangulation (recklessness)[6] fails to precisely encompass the mens rea for second-degree assault (willfulness).[7] Nonetheless, the strangulation definition partially advised the jury of the mens rea for second-degree assault. Consequently, the Court's

---

[6] "Recklessness is conduct 'characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" (citations omitted) *Hopper v. Phil Plummer*, 887 F.3d 744, 759 (6th Cir. 2018).

[7] *See supra* note 5.

omission of the term "willfully" from the second-degree assault jury charge and its reliance on the imperfect synonyms in the strangulation definition to function as a substitute for "willfully" not only lowered the People's burden of proof but may have also enabled the jury to find Jaglal guilty of reckless second-degree assault (an uncodified crime) rather than willful second-degree assault (a statutory crime). Unequivocally, both actions subvert justice and violated Jaglal's constitutional rights. Therefore, although the Superior Court erred when it omitted "willfully" from the jury charge on second-degree assault, the basis for our reversal is the Superior Court's reliance on the imperfect synonyms in the strangulation definition to function as a substitute for the omitted mens rea of "willfully." Irrefutably, this error unconstitutionally lowered the People's burden of proof. Accordingly, we reverse.

¶18     It is axiomatic that "[d]ue process 'require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'. . . Therefore, an instruction that relieves the state of the burden of proving mens rea beyond a reasonable doubt contradicts the presumption of innocence and invades the function of the jury, thereby violating due process. . . . As the Seventh Circuit noted, 'every federal court to consider the question since the [United States Supreme] Court decided *In re Winship* ... has agreed that a conviction procured without any jury instruction on an essential element of the offense is constitutionally invalid.'" *Keating v. Hood*, 191 F.3d 1053, 1061 (9th Cir. 1999) (citations omitted).

¶19     Moreover, we noted in *Nanton v. People*, 52 V.I. 466, 478 (V.I. 2009), that "'[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'. . . [Similarly,] the Sixth Amendment right to a speedy and public trial . . . 'indisputably entitle[s] a criminal defendant to a jury determination that he is guilty of every element of the crime with which he

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 11 of 22

2024 V.I. 28

is charged, beyond a reasonable doubt.'. . . [Therefore], '[a] defendant's due process rights are unquestionably implicated when his purported conviction rests on anything less than a finding of guilt as to all the elements of the crime.'" (citations omitted). Consequently, "jury instructions that relieve the prosecution of its burden of proving every element of an offense beyond a reasonable doubt 'subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases.'. . .Therefore, whether requested or not, the jury is to be instructed on each and every essential element of the offense charged, and failure to do so constitutes [reversible] error." *Id.* at 478-79; *Long v. United States*, Nos. C-2-00-1007 and CR-2-96-068(1), 2001 WL 1678784, at *1 (S.D. Ohio Nov. 13, 2001) (unpublished) ("In order for petitioner to prevail on his claim of deficient jury instructions, the record must reflect a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error that violated due process.); *Tenzer v. Winstead*, No. 07-4782, 2009 WL 455134, at *3 (E.D. Penn. Feb. 24, 2009) (unpublished) ("[L]egally deficient jury instructions may only serve as the basis for [appellate] relief when the 'ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'") (citations omitted); *Betker v. City of Milwaukee*, 22 F.Supp.3d 915, 921 (E.D. Wis. 2014) ("[The] goal is to determine whether the instructions accurately and clearly informed the jury of the law. . . . [The court] will grant the motion only if the instructions misstated the law or did not convey the relevant legal principles and one or both of these failings prejudiced the movant. . . . Jury instructions are not abstract treatises. Their purpose is to state the law applicable to the case at bar in order to assist the jury in reaching a verdict. . . . Instructions should not leave out anything essential but, beyond that, should be as concise as possible. . . . A . . . court has substantial discretion with respect to the precise wording of instructions so long as the final result completely and correctly states the law.") (citations

omitted); *United States v. Hodge*, 211 F.3d 74, 77 (3rd Cir. 2000) ("when a defendant is accused of robbery under Virgin Islands law, the element of specific intent must be recited in the jury charge") (citations omitted).

¶20     Finally, although completely deficient jury instructions totally alleviate the People's burden to prove all elements alleviate the People of its burden to prove all elements of a charged crime beyond a reasonable doubt, partially deficient jury instructions merely lower the People's burden of proof. Regardless, jury instructions that lower the People's burden of proof are as unconstitutional as those that absolve it. *See Cool v. United States*, 409 U.S. 100, 104 (1972) (finding that a jury instruction that lowers the level of proof necessary for the State to carry its burden "is plainly inconsistent with the constitutionally rooted presumption of innocence.") (citations omitted); *Manson v. Haponik*, No. 05-CV-3412 (BMC), 2007 WL 2077895, at *4 (E.D.N.Y. July 18, 2007) (unpublished) ("[As determined by the United States Supreme Court in *In re Winship*, 397 U.S. 358 (1970),] a jury instruction violates [the due process requirement that the prosecution must prove all elements of a charged crime] when it resolves an element of the crime, alleviating the jury's role as fact-finder and lowering the prosecution's burden of proof.") (citations omitted); *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir. 2004), *overruled in part by Byrd v. Lewis*, 566 F.3d 855, 866 (9th Cir. 2009) (holding that deficient jury instructions allowed the defendant to be convicted of a lower standard of proof than reasonable doubt); *Hernandez v. McDowell*, No. CV 16-09578-VBF (JDE), 2017 WL 11635995, at *8 (C.D. Cal. Nov. 17, 2017) (unpublished) ("Jury instructions violate the due process clause of the Fourteenth Amendment to the United States Constitution if there is a 'reasonable likelihood' the jury understood the instructions as lowering the burden of proof for conviction below the reasonable doubt standard.") (citations omitted); *Fischer v. New Hampshire Adult Parole Bd.*, No. 15-cv-130-PB, 2016 WL 5376225, at *8 (D.N.H Sept. 2, 2016) (unpublished) ("[J]ury

instructions can violate a criminal defendant's right to due process if they: (1) shift the burden of proof from the prosecution to the defendant . . . or (2) lower the prosecution's burden of proof to something less than beyond a reasonable doubt.") (citations omitted).).

¶21    Here, although the Superior Court included the mens rea terms when it recited the second-degree assault statute immediately before listing the acts the People had to prove to find Jaglal guilty of second-degree assault, the court omitted the concept of mens rea when it itemized the incriminating acts for the jury immediately thereafter.

¶22    As the quoted language[8] from its jury charge demonstrates, the Superior Court's jury instructions omitted the term "willfully" from the elements for the crime of second-degree assault. Nonetheless, after itemizing the incriminating acts that the People had to prove for Jaglal to be guilty of second-degree assault, the court defined strangulation. "Strangling means intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck, regardless of whether that conduct results in any visible injury, or whether there's any intent to kill or continuously injure the victim." J.A. 701.

¶23    In the strangulation definition, the Superior Court enumerated pivotal mens rea terms, which Jaglal had to display to be culpable of the crime. Specifically, the court noted that

---

[8] Although already stated previously in the opinion, we restate the exact language from the Superior Court's jury charge here for completeness. "In Count 2 of the information, defendant Jaglal is charged with assault in the second degree. This charge is based on his alleged violation of Title 14 VIC Section 296(3), and the relevant portion of that charge is as follows: Whoever willfully strangles or attempt[s] to strangle any person i[s] an act of domestic violence. In order to sustain its burden of proof for the crime of assault in the second degree, domestic violence, as set forth in Count 2 of the Information against the defendant, the People of the Virgin Islands must prove beyond a reasonable doubt that, on or about November 15, 2020, in St. Thomas, Virgin Islands, the defendant Devindra Jaglal strangled or attempted to strangle Rocio Ramirez, a person with whom he had an intimate relationship." J.A. 700-01.

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 14 of 22

2024 V.I. 28

strangulation occurs when an offender intentionally,[9] knowingly,[10] or recklessly restricts a victim's breathing. Importantly, the mens rea synonyms in the strangulation definition are imperfect because they include "recklessly," which is not a synonym for "willfully." *See In re Stewart*, 948 F.3d 509, 528 (1st Cir. 2020) ("[W]illfulness requires a showing of intent to injure or at least of intent to do an act which the [defendant] is substantially certain will lead to the injury in question.") (citations omitted); *Moon v. Trotwood Madison City Schools*, 9 N.E.3d 541, 547 (Ohio Ct. App. 2014) ("The terms 'willful,' 'wanton,' and 'reckless' are sometimes described as being on a continuum, i.e., willful conduct is more culpable than wanton, and wanton conduct is more culpable than reckless. . . . 'Reckless conduct' is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.") (citations omitted); *Charron v. Morris*, 288 F.Supp.3d 810, 816 (W.D. Mich. 2017) ("Standard for establishing that [a] debt is nondischargeable as one for debtor's 'willful and malicious injury' is stringent . . . , [with] debts arising from reckless conduct and negligence [falling outside] this dischargeability exception.") (citations omitted); *United States v. Saunders*, 436 F.Supp.3d 595, 597 (E.D.N.Y. 2020) (explaining that willful disregard does not include recklessness because conscious disregard of risk is less culpable than a practical certainty that harm will materialize); *Griffin*, 524 F.3d at 77 (2008) (finding that the trial court corrected its error when it informed the jury that the criminal intent of "willfully" could not be satisfied by reckless conduct). Therefore, because "recklessly" is not synonymous with "willfully" and because jury instructions must be construed in their entirety, we find that the Superior Court

---

[9] Intentional is defined as "done with the aim of carrying out the act." BLACK'S LAW DICTIONARY 678 (10th ed. 2010).

[10] Knowingly is defined as "in such a manner as the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result." BLACK'S LAW DICTIONARY 731 (10th ed. 2010).

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 15 of 22

2024 V.I. 28

impermissibly lowered the People's burden of proof when it relied on the imperfect synonyms in the strangulation definition to function as a substitute for the omitted second-degree assault mens rea of "willfully." Regrettably, the inclusion of "recklessly" in the strangulation definition compromised its sufficiency to substitute for "willfully" and may have enabled the jury to find Jaglal guilty of reckless second-degree assault rather than willful second-degree assault, which is statutorily required by 14 V.I.C § 296(3). As stated above, jury instructions that lower the People's burden of proof are as unconstitutional as those that completely obliterate the People's burden. Therefore, because the Superior Court relied on the imperfect synonyms in the strangulation definition to function as a substitute for the omitted mens rea of "willfully," we hold that the Superior Court unmistakably erred when it unconstitutionally lowered the People's burden of proof which, thereby, violated Jaglal's due process rights. *See Nanton*, 52 V.I. at 481 ("[W]e conclude that when a jury considers the elements of the crime, the jury is required to be guided by the specific final jury instructions on the elements of the crime, and not guided by reference to or reliance upon the elements of the crime being mentioned in a different context elsewhere in the trial record.").

¶24    However, to reverse, we must also examine whether the Superior Court's error in relying on the imperfect synonyms in the strangulation definition to function as a substitute for "willfully" caused Jaglal prejudice. We conclude that it did. *See United States v. Fast Horse*, 747 F.3d 1040, 1044 (8th Cir. 2014) ("[W]here a defendant has been denied 'his Sixth Amendment right to a jury determination of an important element of the crime, the integrity of the judicial proceeding is jeopardized.' . . . '[B]ecause it is unclear whether a properly instructed jury would have found [defendant] guilty,' failing to correct the district court's error would 'result in a miscarriage of justice.'") (citations omitted).

¶25    To reiterate, the standard under which the constitutionality of the jury instructions is assessed is harmless error. "[T]he harmless error] test requires that the government prove 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Kahn*, 58 F.4th 1308, 1318 (10th Cir. 2023) (citations omitted).

¶26    Under the harmless error test for constitutional errors, Jaglal's conviction is unconstitutional.  To prevail, the People must show beyond a reasonable doubt that the error complained of did not contribute to the verdict. To do that, the court assesses whether the guilty verdict obtained at trial was surely unattributable to the alleged error. *Kahn*, 58 F.4th at 1320.

¶27    Here, the court's reliance on the imperfect synonyms in the strangulation definition to function as a substitute for "willfully" could have certainly contributed to the jury's conclusion that Jaglal was guilty of second-degree assault based solely on the jury's misunderstanding of the applicable mens rea needed to find Jaglal guilty of the crime. Without considering whether Jaglal possessed the applicable statutory intent to assault Garcia, the jury's determination could have rested solely upon the erroneous conclusion that Jaglal acted recklessly rather than willfully when he assaulted Garcia. This result blatantly ignores the elements delineated in the second-degree assault statute, 14 V.I.C. § 1051, which clearly states that a suspect must have acted "willfully" when he engaged in the acts that constituted the assault. *See Cool*, 409 U.S. at 104 ("A jury instruction that "reduce[s] the level of proof necessary for the [prosecution] to carry its burden ... is plainly inconsistent with the constitutionally rooted presumption of innocence.") (citations omitted).

¶28    In *Cool*, the United States Supreme Court held that a trial court's jury instruction on accomplice testimony lowered the prosecution's burden of proof. *Id*. The Supreme Court noted that the trial court's instruction erroneously forced the defendant to prove his innocence beyond a reasonable doubt. The Court reasoned that the jury instruction unconstitutionally lowered the

prosecution's burden of proof because it forced jurors to assess accomplice testimony at the reasonable doubt standard, which is higher than the normal preponderance of the evidence standard. Although the circumstances are different, we concur with the Court in *Cool* and conclude that the Superior Court's reliance on the imperfect synonyms in the strangulation definition to function as a substitute for the omitted mens rea of "willfully" from second-degree assault jury charge lowered the People's burden of proof and undeniably prejudiced Jaglal because he was apparently convicted of a crime without a finding from the jury that the prosecution had proven all the crime's elements beyond a reasonable doubt. Such a travesty maligns our jurisprudence and subverts the function and importance of the Due Process Clause of the Fourteenth Amendment. *See United States v. Gaudin*, 515 U.S. 506, 511 (1995) ("The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality."); *see also Sullivan v. Louisiana*, 508 U.S. 275, 277–78 (1993) ("The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements.") (citations omitted); *Carella v. California*, 491 U.S. 263, 265 (1989) ("The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. Jury instructions relieving States of this burden violate a defendant's due process rights." (citations omitted).

¶29     Accordingly, under the harmless error test, the Superior Court's reliance on the imperfect synonyms in the strangulation definition to function as a substitute for the omitted mens rea of "willfully" amounted to reversible error because the error may have contributed to

Jaglal's guilty verdict, which obviously prejudiced him and undermined his constitutional rights. Moreover, the trial record lacks sufficient evidence on whether Jaglal's intended to commit second-degree assault against Garcia to allow a reasonable jury to find that, absent the error, he had the requisite mindset to commit the crime. *United States v. Freeman*, 70 F.4th 1265, 1281 (10th Cir. 2023) ("[I]f it is "clear beyond a reasonable doubt that a rational jury would [not] have" rendered the same verdict "absent the error," then the error did . . contribute to the verdict, and, therefore, the error is [not] harmless.) (citations omitted). Consequently, because the Superior Court's reliance on the imperfect synonyms in the strangulation definition to function as a substitute for the omitted mens rea of "willfully" in this case was not harmless and the error prejudiced Jaglal at trial, we reverse Jaglal's conviction for second-degree assault and remand to the Superior Court with instructions to grant him a new trial on that charge.

## B. The Superior Court's Improper Admission of Prejudicial Testimony Amounted to Harmless Error

¶30     In his papers, Jaglal also asserts that the Superior Court abused its discretion when it allowed Garcia to testify about telephone calls she received from Jaglal's mother, who attempted to persuade Garcia to dismiss the case against Jaglal. We begin the analysis with a brief review of the pertinent Rules of Evidence.

¶31     In the Virgin Islands, relevant evidence is admissible if it has the tendency to make a fact more or less probable than it would be without the evidence and the fact is pivotal to determining the issue in question. V. I. EVID. R. 401. However, even relevant evidence may be inadmissible if the court finds that the value of the evidence is substantially outweighed by other considerations including unfair prejudice to either party, confusing the jury, misleading the jury, undue delay in executing trial matters, wasting the court's time, or needlessly presenting cumulative evidence. V. I. EVID. R. 403.

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 19 of 22

2024 V.I. 28

¶32 Here, the Superior Court allowed Garica to testify about calls she received from Jaglal's mother, who attempted to persuade her to dismiss the case against Jaglal. J.A. 266-71. However, the court made no inquiry about whether Jaglal asked his mother to contact Garcia or whether Jaglal asked his mother to persuade Garcia to dismiss the case against him. Moreover, Garcia testified that she had lived with Jaglal for three months before they travelled to St. Thomas. Garcia also testified that she told hospital staff that she might be pregnant. Given the brevity of their relationship as well as other considerations including the fact that Garcia lived in Jaglal's house, that Garcia was an immigrant who had only been in the United States for eight years before she met Jaglal, that Garcia was an online student with considerable free time because she was unemployed, and that Garcia thought she was pregnant, it is foreseeable that Garcia may have independently developed a relationship with Jaglal's mother who could potentially facilitate Garcia's understanding of and adaptation to the United States. J.A. 126-28, 187-92, 285-87. Without some indication that Jaglal attempted to use his mother to impermissibly influence or manipulate Garcia, there was no foundation to admit Garcia's testimony regarding the phone calls Jaglal's mother made to her. Essentially, while the calls would be admissible evidence if there was an indication that Jaglal asked or paid his mother to persuade Garcia to terminate the charges against him, admission of the calls into trial evidence was highly prejudicial to Jaglal because the negative impression was clear – that he illegally attempted to influence Garcia and, likewise, the trial by asking or paying his mother to convince Garcia to dismiss the charges. However, as already stated, the trial record lacks any evidence Jaglal asked or paid his mother to contact Garcia. Moreover, the Superior Court failed to inquire whether Jaglal's mother frequently called Garcia or if Garcia and Jaglal's mother were friendly toward each other. Had the Superior Court made any of these inquires, it may have learned whether Garcia and Jaglal's mother were friends and if Jaglal's mother was sufficiently

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 20 of 22

2024 V.I. 28

comfortable with Garcia to ask her to terminate the charges against Jaglal without Jaglal's knowledge. Yet, the Court did not ask Jaglal if he compelled his mother to contact Garcia nor did the Court ask Garcia about the nature of her relationship with Jaglal's mother. Accordingly, because the Superior Court failed to identify a connection between Jaglal and the telephone calls his mother made to Garcia to persuade her to dismiss the case against him, we find that the Superior Court abused its discretion when it allowed Garcia to testify about the calls she received from Jaglal's mother, which unfairly prejudiced Jaglal.

¶33     However, to reverse Jaglal's simple assault conviction, we must next determine whether the improper admission of the telephone calls from Jaglal's mother to Garcia into trial evidence was prejudicial or harmless to the integrity of the entire proceeding. *See Green v. United States*, 262 F.3d 715, 718 (8th Cir. 2001) ("Indeed, with respect to other types of errors that are amenable to harmless-error analysis, the Supreme Court [of the United States] has remarked that the prejudicial effect of trial errors may be assessed in the context of the rest of the evidence presented at trial.") (citations omitted). Accordingly, because of the copious evidence in the trial record that Jaglal attempted to batter or assault[11] Garica, we hold that the Superior Court's error of improperly admitting the calls from Jaglal's mother to Garcia into trial evidence is harmless.

¶34     Specifically, Garcia testified that Jaglal repeatedly choked her, kicked her, and threatened to kill her over the course of the entire incident. Additionally, when shown many of the People's exhibits, Garcia confirmed that they depicted her bruises on different parts of her body several days after Jaglal had caused them. J.A. 133- 42, 148-64.

---

[11] Assault and battery are defined as "[w]hoever uses any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, commits an assault and battery." 14 V.I.C. §292.

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 21 of 22

2024 V.I. 28

¶35 Furthermore, both Thomas and Samples testified that they heard screams emanating from room 206 where Garcia and Jaglal were housed. Thomas further stated that he heard jostling furniture, someone yelling "get off me," and pleas for help coming from room 206. J.A. 369-76. What's more, Samples' testimony corroborated Thomas' testimony. Samples testified that he heard a woman scream for help and that the scream emanated from room 206. Samples stated that the woman in room 206 was screaming for her life. Samples also confirmed that he heard a ruckus in room 206 as well as a woman's repeated cries of "get off me." Finally, Samples stated that he contacted authorities to alert them of the potential violence occurring in room 206. J.A. 416-24.

¶36 Third, Officer Tatum, who responded to the report of violence in room 206, testified that Jaglal answered when he knocked on room 206's door. Officer Tatum stated that Jaglal appeared intoxicated, smelled of alcohol, had red eyes, was very aggressive, and was overtly hostile towards police presence. Officer Tatum further testified that, once extracted from room 206, Garcia appeared meek and extremely scared. J.A. 466-69.

¶37 Finally, Dr. Smith, who treated Garcia at Schneider Regional Hospital on the night of the incident, testified that Garcia had contusions, which are subdermal bruises, on her back, neck, and elbow. J.A. 307-08.

¶38 Cumulatively, the trial record contained ample evidence on which a reasonable jury could find Jaglal guilty of simple assault. *See United States v. Turner*, 583 F.3d 1062, 1067 (8th Cir. 2009) ("'[T]he jury is free to consider all the evidence—direct and indirect—presented of the defendant's statements and actions' and they may 'draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence.'") (citations omitted). Therefore, because the trial record contained sufficient evidence from which a reasonable jury could find Jaglal guilty of simple

*Jaglal v. People*
S. Ct. Crim. No. 2022-0033
Opinion of the Court
Page 22 of 22

2024 V.I. 28

assault, we conclude the Superior Court's error of improperly admitting evidence of calls Jaglal's mother made to Garcia was harmless. Accordingly, we affirm Jaglal's simple assault conviction.

## V.    CONCLUSION

¶39    To conclude, we affirm Jaglal's simple assault conviction. However, because the Superior Court plainly erred when its deficient jury instruction unconstitutionally lowered the People's burden of proof needed to convict Jaglal of second-degree assault and Jaglal was prejudiced at trial by the error, we reverse his second-degree assault conviction and remand the matter to the Superior Court with instructions to grant him a new trial on that charge.

Dated this ___16___ day of ___August___ 2024

BY THE COURT:

**IVE ARLINGTON SWAN**
Associate Justice

ATTEST:
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: _____/s/ Reisha Cornerio_____
**Deputy Clerk**

Date: ___August 16, 2024___